UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS ALEXANDER PEREIRA CARBALLO,<br>Petitioner,<br>v.<br>CHRISTOPHER LAROSE, et al.,<br>Respondents. | Case No.: 26cv4281-LL-GC<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>[ECF No. 1] |

Before the Court is Petitioner Douglas Alexander Pereira's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response [ECF No. 4, ("Ret.")] and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** an immediate release.

## I. BACKGROUND

Petitioner is a native and citizen of El Salvador. Pet. ¶ 24. At the age of 14, Petitioner entered the United States as an unaccompanied minor without inspection in or about May 2014. *Id*. Shortly after his entry, Petitioner was apprehended by the immigration authorities and was transferred to the custody of the Office of Refugee Resettlement ("ORR") as an unaccompanied minor. *Id*. ¶¶ 25–26. On or about May 30, 2014, ORR released Petitioner

from federal custody to a relative sponsor. ECF No. 1-2. On or about April 7, 2015, the Immigration Court administratively closed Petitioner's removal proceedings, noting that Petitioner was a minor. ECF No. 1-3. Following his release from ORR custody, Petitioner remained at liberty for approximately 12 years until he was taken into immigration custody on April 3, 2026, following a traffic stop in Florida. Pet. ¶¶ 29–30. Petitioner was subsequently transferred to Otay Mesa Detention Facility, where he remains detained. *Id.* ¶ 31.

On July 27, 2026, Petitioner filed the instant Petition alleging Respondents violated the Fifth Amendment's Due Process Clause and the Administrative Procedures Act ("APA"). *Id.* ¶¶ 50–61. Specifically, Petitioner claims that Respondents provided "no prior notice, no explanation, and identified no changed circumstances justifying this re-detention." *Id.* ¶ 30.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

## III. DISCUSSION

Petitioner argues that his detention without notice or a hearing violate the Fifth Amendment's Due Process Clause and the APA. Pet. ¶¶ 50–61. Respondents do not directly address Petitioner's claims; they merely state that they "do not oppose an order from this Court directing a bond hearing." Ret. at 2. Because the Court finds that

Petitioner's Fifth Amendment claim is meritorious and justifies Petitioner's release, the Court will only address this claim in this Order.[1]

The Court finds that having been previously released from federal custody by ORR over 12 years ago, Petitioner has a protected liberty interest in remaining free from detention. The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

"Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

---

[1] Because the Petition can be resolved on due process grounds, the Court declines to reach Petitioner's claims of APA violation. However, the Court notes that other courts have found violations of the APA in similar circumstances. *See, e.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1156 (S.D. Cal. 2025) ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Here, Petitioner alleges that he was detained without any explanation as to why he was detained. Pet. ¶ 30. In contrast, Respondents have not shown that Petitioner violated the conditions of his release or explain why they revoked his liberty interest that would justify his detention. *See generally* Ret.

The Court finds that all three factors support a finding that Petitioner's detention without notification, reasoning, or an opportunity to be heard denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for the revocation or giving him an opportunity to be heard. After the initial determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, Respondents have not produced any argument or evidence that these findings have changed. *See Saravia v.*

*Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is no indication that Petitioner has failed to abide by the conditions of his release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

Therefore, because Respondents detained Petitioner by revoking his release without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez*, 2025 WL 2770629, at *4 (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances,

thus violating her due process rights and rendering her detention unlawful). The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori*, 807 F. Supp. 3d at 1163–66 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing). Accordingly, the Court **GRANTS** Petitioner's Petition.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus and **ORDERS** that Respondents to immediately release Petitioner from custody subject only to the conditions of his preexisting parole. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: August 7, 2026

Honorable Linda Lopez
United States District Judge